UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION


THEODORE J. WIDEN,
        Petitioner,

v.                                                    CASE NO. 5:08-cv-166-OC-10GRJ


SECRETARY, DEPARTMENT OF
CORRECTIONS, et al.,
        Respondents.
_____

## ORDER

Petitioner initiated this action for habeas corpus relief pursuant to 28 U.S.C. § 2254 (Doc. 1).  Upon consideration of the petition, the court ordered Respondents to show cause why the relief sought in the petition should not be granted.  Thereafter, Respondents filed a response to the petition for writ of habeas corpus in compliance with this Court's instructions and with the *Rules Governing Section 2254 Cases in the United States District Courts* (Doc. 5).  Respondents also filed an amended response in compliance with this Court's instructions (Doc. 12).

Petitioner's one claim in the habeas petition alleges ineffective assistance of trial counsel because trial counsel failed to prepare and investigate the defense theories of self defense and insanity at the time of the crime and because defense counsel should have filed a motion to suppress his confession (Doc 1).  Upon due consideration of the petition, the amended response, Petitioner's reply, and the state court record contained in Respondents'

appendix and supplemental appendix, the Court concludes that the petition must be denied.[1]

## I.    Procedural History

Petitioner was charged by information with murder in the second degree on December 19, 2005 (App. A).[2]  On October 17, 2006, pursuant to plea negotiations entered into between Petitioner and the State Attorney's Office, Petitioner entered a guilty plea to the charge of murder in the second degree and received a sentence of 246 months in prison (App. B, C, D). Under the terms of the plea agreement, Petitioner took no direct appeal (App. B).

Petitioner filed a Motion for Modification or Reduction of Sentence pursuant to Florida Rule of Criminal Procedure 3.800(c) on December 11, 2006 (App. P).  Petitioner asked that his sentence be reduced to nine years in prison with twelve years of supervised probation (App. P).  Petitioner's grounds for mitigation were that his capacity to appreciate the criminal nature of the conduct or to conform that conduct to the requirements of the law was substantially impaired at the time of the crime and that the victim was a willing participant, aggressor, or provoker of the incident (App. P).  The motion was denied on December 28, 2006 (App. Q).  No appeal was taken.

Petitioner filed a Rule 3.850 motion for post conviction relief on August 10, 2007 alleging that trial counsel was ineffective for failing to challenge statements made by Petitioner prior to his arrest and by failing to investigate two theories of defense (App. E).  The motion was denied on October 9, 2007 without an evidentiary hearing and rehearing was denied on

---

[1] Because the Court may resolve the petition on the basis of the record, the Court has determined that an evidentiary hearing is not warranted.  *See* Rule 8, Rules Governing Habeas Corpus Petitions Under Section 2254.

[2] Unless otherwise noted, referenced appendices refer to exhibits in Respondents' Appendix filed June 13, 2008 (Doc. 7) or to Respondents' Supplemental Appendix filed June 24, 2010 (Doc. 12).

October 31, 2007 (App. F).  Petitioner appealed the orders on November 21, 2007 (App. I) and

argued that an evidentiary hearing should have been held because the record did not support

the state court's decision to deny the motion (App. J at 4-5).  The state declined to file an

answer brief (App. K).  The Florida Fifth District Court of Appeal *per curiam* affirmed on

January 15, 2008 and mandate was issued on March 3, 2008 (App. L, M).  Petitioner moved

for rehearing on January 25, 2008 alleging that the trial court failed to transmit the complete

record to the appellate court  (App. N). On February 14, 2008, the motion for rehearing was

denied  (Doc. 1 at attachment).

The instant petition was timely filed with this Court on April 30, 2008 (Doc. 1).

Respondents filed a response on June 11, 2008 (Doc. 5).  Petitioner filed a reply on July 2,

2008 (Doc. 8).  On June 24, 2010, this Court ordered Respondents to file a supplemental

response (Doc. 11) which was filed on July 12, 2010 (Doc. 12).

## II.    Legal Standards

### A.    *Standard of Review Under the Antiterrorism Effective Death Penalty Act ("AEDPA")*

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a

claim adjudicated on the merits in state court unless the adjudication of the claim:

(1)     resulted in a decision that was contrary to, or involved an unreasonable
        application of, clearly established Federal law, as determined by the
        Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination
        of the facts in light of the evidence presented in the State court
        proceeding.

28 U.S.C. § 2254(d).  The phrase "clearly established Federal law," encompasses only the

holdings of the United States Supreme Court "as of the time of the relevant state-court

3

decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

The 'contrary to' and 'unreasonable application' clauses of § 2254(d)(1) articulate independent considerations a federal court must consider. *Maharaj v. Secretary for Dep't. of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005), *cert. denied*, 549 U. S. 819 (2006). The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

Even if the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable." *Id*. Whether a state court's decision was an unreasonable application of law must be assessed in light of the record before the state court. *Holland v. Jackson*, 542 U.S. 649, 652 (2004) (*per curiam*); *Bell v. Cone*, 535 U.S. 685, 697 n.4 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

B.      *Standard for Ineffective Assistance of Counsel*

The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense. *Id*. at 687-88.  In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the United States Supreme Court clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  *Id*. at 689-90.  Thus, "a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  *Id*. at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989).

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight.  *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted).  Under those

5

rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

### C.    Standard of Review for Voluntary Pleas

A guilty plea is open to attack on the ground that counsel did not provide the defendant with reasonably competent advice. *Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980). The Supreme Court has held that the two-part *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). In order to obtain relief under *Strickland*, a defendant who pleaded guilty must show that: 1) his lawyer's performance was deficient; and (2) a reasonable probability that, but for the counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Hill,* 474 U.S. at 59. The *Hill* court explained the prejudice requirement with specific regard to a defense counsel's alleged failure to investigate potentially exculpatory evidence:

> In many guilty plea cases, the "prejudice" inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial. For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial.

*Id.* at 59. In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. *Strickland*, 466 U.S. at 688.

## III.   Analysis

Petitioner contends that trial counsel ("counsel") was ineffective for failure to prepare and investigate the defense theories of self defense and insanity at the time of the crime. (Doc. 1 at 6).  Although presented in the instant petition as one claim, Petitioner's claim alleges that counsel was ineffective in three ways: 1) counsel did not adequately investigate the defense theories of insanity and self defense; 2) counsel did not properly advise him of the available defense theories; and 3) counsel did not move to suppress a confession to police. Petitioner alleges that, instead of preparing for trial, counsel badgered him to enter a plea to the charge "that left him in a vulnerable position." (Doc. 1 at 6).

Petitioner raised the instant claim as separate claims in his motion for post-conviction relief (App. E).[3]  The  trial court denied the claims without holding an evidentiary hearing, stating in part:

> Included in ground one are accusations regarding Counsel's failure to prepare a defense, and Defendant asserts that he entered into the plea agreement because he had "no other course of action."  The record clearly indicates otherwise.  Although the Defendant might regret having entered into a plea agreement, the record does show that Counsel was working towards preparing a defense.  During the time between the Defendant's arrest and the acceptance of a plea agreement, Counsel conducted two deposition, had the Defendant's mental competency evaluated, and filed for a continuance. There is no evidence that Counsel was doing nothing to investigate and prepare for a possible jury trial.
>
> Ground two of the Defendant's Motion alleges that Counsel failed to properly investigate the Defendant's case.  Many of the claims in ground two are similar to those also addressed in ground one.  Ground two is also insufficient according to the *Strickland* standard.  The Defendant argues that Counsel failed to obtain the 911 tapes, reports on Constance Smith's medical condition, and a statement from the Detective who interviewed the Defendant.  All of these claims are refuted by the discovery notices exchanged by the prosecution and  Counsel.

---

[3]Petitioner's Rule 3.850 motion for post-conviction relief contained three grounds for relief.  Many of the claims addressed in the three grounds were similar to one another.  As such, Petitioner appears to have conflated portions of the three grounds into one claim in the instant petition.

*See attached Discovery Notices*.  The Defendant's claims do not establish that Counsel's performance fell below the range of reasonable professional assistance.  Defendant's second claim is denied.

In the last ground for relief, the Defendant claims that Counsel should have asserted "mixed defenses" on Defendant's behalf.  According to the Defendant, there was sufficient evidence available to establish the defenses of both insanity and self defense.  Counsel did have the Defendant evaluated by a licensed psychologist in the spring of 2006.  At the time the Defendant was found *sane* by the Doctor.  *See attached letter.*  With the diagnosis given by the Doctor, an insanity defense had no basis in fact.  The Defendant also claims that Counsel was ineffective for "[failing] to study and investigate the, at the time, new law of self defense."  The Defendant offers no evidence that this was the case, and therefore Defendant's accusation is merely conclusory.  Ground three fails to meet the *Strickland* standard.

(App. F at 3-4) (internal citations to record omitted) (emphases in original).  The Fifth District

Court of Appeal *per curiam* affirmed the lower court's denial of this claim (App. L).

### A.  Failure to Investigate

Petitioner alleges that his trial attorneys rendered ineffective assistance of counsel when

they failed to prepare and investigate defenses to the crime (Doc. 1 at 6).  In its order denying

Petitioner's Rule 3.850 motion, the state court determined that the record clearly indicates that

Petitioner's counsel was "working towards preparing a defense." (App. F at 3).  Specifically, the

trial court pointed to the fact that, in the ten months between Petitioner's arrest and the plea

agreement, counsel conducted two depositions, had Petitioner's mental competency evaluated

and filed for a continuance (App. F at 3).  Furthermore, counsel exchanged discovery notices

with the state (App. F at 3; Supp. App. II).

A review of the record supports the trial court's conclusion.  Counsel had a

psychological/neuropsychological evaluation conducted on Petitioner by a licensed psychologist

in order to assist in preparation of his defense (Supp. App. III).  Counsel conducted depositions

of neighbors David Gadlage and Charles Corcoran (App. G, H).  Counsel exchanged several

discovery notices with the state including police incident reports which contained statements from Constance Smith, the only witness to the crime, who described the circumstances surrounding the incident in detail to the police (Supp. App. I, II).  In light of the record evidence, the stat court's determination that counsel had worked towards preparing a defense was not based on an unreasonable determination of the facts.  As such, counsel's performance did not fall below an objective standard of reasonableness.  Because Petitioner has failed to establish that counsel's performance was deficient, it is unnecessary for this court to determine whether Petitioner was prejudiced by a failure to adequately investigate defense theories.  *See Stricklan*d, 466 U.S. at 697 (no reason to address both components of the inquiry if a defendant makes an insufficient showing on one).   Accordingly, this claim must be denied pursuant to § 2254(d)(2).

### B.  *Failure to Advise Petitioner of Affirmative Defenses*

Petitioner alleges that counsel failed to properly advise him of two possible defenses: 1) self defense; and 2) insanity at time of crime (Doc. 1 at 6). Petitioner alleges that he had a valid affirmative defense under a self-defense law that took effect thirty days prior to the offense and that his counsel misadvised him on entering the plea (Doc. 1 at 6b).  He further asserts that his attorneys failed to correctly communicate the facts and merits of the case and this failure caused the Petitioner to enter a guilty plea to a crime that had a defense (Doc. 2 at 3).   Finally, Petitioner asserts that, had he been properly advised, he would have elected to go to trial (Doc. 2 at 3).

Petitioner raised this issue in his Rule 3.850 motion for post conviction relief (App. E), but it was not specifically addressed by the state court.  The Eleventh Circuit has determined that no comment or discussion by the state court is necessary to trigger AEDPA deference.  *See*

*Blankenship v. Hall*, 542 F.3d 1253, 1271 (11th Cir. 2008) ("We have repeatedly held a state court's summary rejection of a claim qualifies as an adjudication on the merits under § 2254(d) so as to warrant deference."). Therefore, this Court may uphold the state court's decision that counsel was not unconstitutionally deficient if our review of the record reveals that a reasonable view of the facts before the state court supports such a conclusion. *Blankenship*, 542 F.3d at 1272..  The record before this Court does not support a claim that counsel coerced Petitioner into pleading guilty or that counsel did not advise Petitioner of available affirmative defenses.

The record clearly indicates that Petitioner was aware of, and discussed with counsel, a possible mental health defense.  At his plea hearing on October 17, 2006, Petitioner was represented by two public defenders (App. C at 3).  The following exchange occurred:

| | |
|---|---|
| THE COURT: | Now your attorneys, I guess, discussed with you and considered any possible defenses such as, you know, mitigating reasons or, you know, competency issues, things of that nature. |
| MS. CONCANNON: (defense counsel) | Yes, Sir.  He's been evaluated for competency. I will put on the record that Mr. Widen has been Baker Acted in the past but that is no longer an issue.  He's been evaluated since then.  That was – |
| DEFENDANT: | Last year. |
| MS. CONCANNON: | Okay. |
| THE COURT: | Okay.  And you believe this to be in your best interest? |
| DEFENDANT: | Yes. |

This exchange indicates that issues of mental health were discussed with Petitioner. Furthermore, on October 17, 2006, Petitioner noted in his plea agreement that he discussed with his attorney the facts of the case and the defenses that might be available (App. B).  At the

plea hearing the trial court explained to Petitioner that, if he went to trial, he would have the right to bring defense experts into court to testify on his account (App. C).  Finally, Petitioner admits that counsel discussed a mental health defense with him soon after his arrest.   In a memorandum of law in support of Petitioner's Rule 3.850 motion, Petitioner stated:

> Through two interviews and a battery of psychological tests, with two Doctor's on December 10th and December 17th, with the results in Attorney Concannon's possession by December 27, 2005, since she made a special visit at the jail to discuss the results with the Defendant and what it all meant for the defense.  She explained the results from those numerous tests and assorted interviews demonstrate the Defendant has a mental health issue that is treatable with medication and counseling.

> The lead Doctor's report concluded that when the Defendant is placed in an extreme fearful situation with his life threatened, it could trigger a fit of "rage" or known as an "insane blackout".

> As counsel explained, this was very favorable evidence for the defense, because it gives an explanation as to why the Defendant lost control on the morning of December 1st.  In less than thirty days, and defense had secured strong testimony that the Defendant was in a blackout at the time the crime was committed.

(App. E at 9).   Clearly, counsel informed Petitioner that he had a potential mental health defense.  In addition, a  May 1, 2006 letter to counsel from Petitioner's examining psychologist stated that: "[a]lthough it is this examiner's opinion that Mr. Widen was **Sane** at the time of this offense, it is likely that his judgement was significantly compromised as he perceived the woman who he had been taking care of to be in danger." (Supp. App. III at 1) (emphasis in original). Petitioner's own words and the record indicate that counsel investigated an insanity defense and communicated the results of that investigation with Petitioner. This court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.  Petitioner has not overcome this presumption and counsel was not ineffective for failing to advise Petitioner of a possible insanity defense.

11

Because no evidentiary hearing was held pursuant to Petitioner's motion for post-conviction relief, the record is void of information as to whether counsel discussed the affirmative defense of self-defense with Petitioner. The failure of an attorney to inform his client of the relevant law satisfies the first prong of the *Strickland* analysis. *Hill v. Lockhart*, 474 U.S. 52, 62 (1985). However, the record clearly indicates that, even if counsel failed to discuss self defense with Petitioner, the failure did not prejudice him and is not ineffective assistance of counsel by *Strickland* standards. This Court does not conclude that counsel made such an omission. In fact, police incident reports state that Petitioner told police that he murdered the victim in self defense (Supp. App. II at 38). It is wholly incredible that Petitioner would have asserted this defense to police without subsequently inquiring of counsel as to its applicability. However, because Petitioner cannot demonstrate prejudice, it is unnecessary to reach this prong of the Strickland analysis. *See Stricklan*d, 466 U.S. at 697 (no reason to address both components of the inquiry if a defendant makes an insufficient showing on one).

The standard for whether a Petitioner who pleaded guilty suffered prejudice is whether, but for the counsel's errors, Petitioner would not have pleaded guilty and would have insisted on going to trial. *Hill,* 474 U.S. at 59.[4] In addition, "[w]here the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense would have succeeded at trial." *Id.* A careful review of the record indicates that the affirmative defense

---

[4] Notably, the trial court incorrectly stated the rule in *Strickland* for situations in which a petitioner challenges a guilty plea based on ineffective assistance of counsel. The trial court determined that Petitioner "must ultimately show a reasonable probability that, but for counsel's errors, the Defendant would not have been found guilty at trial." (App. F at 2). However, as stated above, under *Hill v. Lockhart*, in order to show prejudice in the context of a guilty plea, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. 474 U.S. at 59. This error does not affect this Court's analysis of the petition.

of self-defense is unlikely to have succeeded at trial.

Petitioner points to Florida Statute § 776.013(3)  which became effective thirty days before the offense:

> A person who is not engaged in an unlawful activity and who is attacked in any other place where he or she has a right to be has no duty to retreat and has the right to stand his or her ground and meet force with force, including deadly force if he or she reasonably believes it is necessary to do so to prevent death or great bodily harm to himself or herself or another or to prevent the commission of a forcible felony.

(App. E).  Petitioner stated in his memorandum of law in support of his Rule 3.850 motion that, "as long as the person was not breaking the law, the person has the right to stand their ground and meet force with force." (App. E at 15).  Petitioner appears to misunderstand Florida law. Under Florida law, in order to justify the use of deadly force, "the appearance of danger must have been so real that a reasonably cautious and prudent person under the same circumstances would have believed that the danger could be avoided only through the use of that force." *Montanez v. State*, 24 So.3d 799, 803 n.2 (Fla 2nd DCA  2010) (quoting Florida Standard Jury Instruction (Criminal) 3.6(f)).  Petitioner has presented no evidence that deadly force was justified in this case and, in fact, police incident reports indicate that Petitioner was the initial aggressor (Supp. App. II at 21-22, 35).  Under Florida law, an affirmative defense of self-defense is not available to the initial aggressor unless the victim responds with extreme force or if the aggressor has attempted to withdraw and the victim counterattacks.  *See* Florida Statute § 776.041.

Petitioner points to deposition testimony of neighbors David Gadlage and Charles

13

Corcoran which he asserts supports the affirmative defense of self-defense.[5]  David Gadlage was deposed by defense counsel on June 28, 2006 (App. G).  Gadlage testified that the victim had been verbally abusive to Constance Smith, the disabled owner of the house,[6] but that he had no evidence the victim was physically abusive towards anybody (App. G at 9).  He also testified  that Ms. Smith never complained of being physically abused and that he never saw a bruise on her (App. G. At 9).  Gadlage testified that, although he was unaware of the victim being physically aggressive towards Petitioner, "his body language would scare most people into feeling defensive." (App. G at 12).

Charles Corcoran was also deposed on June 28, 2006.  Corcoran testified that the victim had been abusive verbally and emotionally to everybody in the neighborhood (App. H at 6). He testified that the victim was verbally abusive to Ms. Smith to the extent that he could hear the verbal abuse from his home across the street (App. H at 8).  He testified that police officers were frequently called to Ms. Smith's home (App. H at 9). He testified that he heard the victim verbally abusing Ms. Smith on the day of the murder (App. H at 18).   However, Corcoran stated that he had never seen any physical altercations at the home and that he had never heard the victim make physical threats to Ms. Smith (App. H at 13).  Corcoran stated that he felt sorry for Petitioner, but that he was glad the victim was gone (App. H at 21).

Contrary to Petitioner's assertions, although the deponents' testimony presents the victim as unlikeable and as verbally abusive, it does not support the affirmative defense of self-

---

[5]Under Florida law, evidence of a victim's propensity for violence is admissible to show his propensity to perform violence and likelihood that the decedent was the aggressor.  *See* Florida Statute § 90.404; *Smith v. State*, 410 So.2d 579 (Fla. 4th DCA 1982).

[6]Both Petitioner and victim had been hired to care for Ms. Smith who was suffering from advanced multiple sclerosis.

defense.  Despite multiple questions regarding physical abuse, neither neighbor testified that he had witnessed any physical aggression from the victim.

Petitioner also asserts that trial counsel should have deposed Constance Smith and her friend, Esse Mano, prior to their deaths because their testimony would have been favorable to a theory of self-defense (Doc. 1 at 6b).  Petitioner alleges that Ms. Smith would have testified to the mental and physical abuse suffered at the hands of the victim and that Ms. Mano would have corroborated her testimony (Doc. 1 at 6c).  These assertions are contradicted by an incident report filed by Officer Jorge Fernandez who responded to the call of a murder in Ms. Smith's home.  Officer Fernandez reported that Ms. Smith told him immediately after the crime that the victim was not threatening her and that Petitioner was the initial aggressor in the altercation (Supp. App. II at 21-22).  She also reported that the victim never had a chance to defend himself (Supp. App. II at 22).

Detective Harold Ellzey also interviewed Ms. Smith after the crime (Supp. App. II at 35).  In his incident report, Detective Ellzey noted that Ms. Smith stated that she and the victim were talking about betting on football pools immediately prior to the altercation and that the victim, who was hard of hearing, often yelled at her when he could not hear what she was saying.  Ms. Smith advised the officer that she heard Petitioner push the victim from a chair in the living room and proceed to strike the victim with his hands and feet.  Afterwards, while the victim was on the ground, Ms. Smith stated that Petitioner went into the kitchen and retrieved a steel cooking pot which he used to beat the victim about the head and face.  Afterwards she stated that Petitioner squeezed orange juice into the victim's eyes as he lay on the ground, attempting to breath (Supp. App. II at 35).

Ms. Smith's statements to police immediately after the crime do not support Petitioner's

15

use of deadly force.   Furthermore, Petitioner's allegation that Ms. Smith's and Ms. Mano's testimony would support an affirmative defense of self-defense is speculative and conclusory. As such, counsel was not ineffective for failing to depose Ms. Smith and Ms. Mano. *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (Petitioner not entitled to an evidentiary hearing or federal habeas relief on his ineffective assistance of counsel claims where the claims are conclusory or wholly incredible).

Given the facts revealed in the record, Petitioner's self-defense claim was unlikely to succeed.   Furthermore, Petitioner was facing life imprisonment if convicted at trial.   *See* Florida Statute § 782.04(2).   He received a sentence of 246 months in prison under the plea arrangement.   As such, Petitioner has failed to demonstrate that he would have insisted on going to trial had he been properly advised of the affirmative defense of self defense.

Because Petitioner has failed to demonstrate that he was prejudiced by counsel's failure to properly advise him of the affirmative defense of self defense, it is unnecessary for this court to determine whether his counsel's performance was deficient. *See Strickland*, 466 U.S. at 697 (stating that there is no reason for a court "to address both components of the inquiry if the defendant makes an insufficient showing on one."). Accordingly, this claim is denied pursuant to § 2254(d).

### C.   *Failure to move for suppression*

Petitioner alleges that he confessed to killing the victim based on fear and hope of a reduced charge from murder in a premeditated design and that trial counsel was ineffective by failing to move to suppress the confession (Doc. 1 at 6b).   Petitioner raised this issue in his 3.850 motion for post conviction relief (App. E), and it was rejected by the state court.   The state court noted:

16

The Defendant claims that this confession was not freely and voluntarily given because the Detective promised to talk to the prosecutor about reducing the charge against the Defendant to manslaughter.  A promise of leniency from a police officer is "only objectionable if they establish an express quid pro quo bargain for the confession." *State v. Moore*, 530 So.2d 349, 350 (Fla. 2d DCA 1988).  The Defendant states in his Motion that the Detective "made [an] implied promise to have the charge drawn up as manslaughter." *See Defendant's Motion, p. 7*.  An implied promise is simply not enough to establish that a confession was improperly coerced.  The Defendant presents no evidence that there was a specific exchange of promises that induced him to discuss the crime with the Detective.  This claim fails to meet the *Strickland* standard because it does not establish how failure to file a motion to suppress prejudiced the Defendant.

A review of the record and Florida law support the state court's determination that this claim fails under *Strickland*.[7]  In a taped interview with Detective Miguel Gauthier, Petitioner admitted beating the victim to death (Supp. App. II at 38).  Petitioner stated that he argued with the victim because the victim continually yelled at Ms. Smith for no reason.  Petitioner stated that during the argument, the victim "bowed up" to him at which time he grabbed the victim and threw him against a dining room wall several times.  The victim fell to the floor, and when he tried to get up, Petitioner struck him in the head with closed fists.  Petitioner then retrieved a steel pot from the kitchen and again struck the victim several times around the head.  When the victim told Petitioner that he was going to call police, Petitioner stomped him numerous times on the head and torso.  Petitioner continued to stomp the victim even after blood began coming from his mouth (Supp. App. II at 38).

In his Rule 3.850 motion, Petitioner stated that Detective Gauthier lead him to believe that, with his cooperation, the detective would "go to the State and talk favorably to have the

---

[7]The state court indicates that the claim fails because Petitioner was not prejudiced by counsel's failure to object because an objection would have failed.  However, counsel was not ineffective for failing to raise a non-meritorious issue.  As such, this Court will address the first prong of *Strickland* instead of the prejudice prong.

charge as a manslaughter." (App. E at 6).  Petitioner also stated that counsel "was obligated to set [a self defense] theory into action by filing pretrial motions to suppress the confession." *Id.*

In Florida, police may not obtain a confession through direct or implied promises. *Johnson v. State*, 696 So.2d 326 (Fla. 1997).  However, police misrepresentations alone do not necessarily render a confession involuntary. *Blake v. State*, 972 So.2d 839, 844 (Fla. 2007). Before finding a confession inadmissible, Florida courts have required that the alleged promise "induce, be in return for or be a *quid pro quo* for the confession."  *Id.*  In the present case, the circumstances do not suggest that the confession was given in return for a manslaughter charge.  There was only an indication that the officer would talk favorably to the state. Furthermore, Petitioner acknowledges that he had received and waived his *Miranda* rights (App. E at 6).

Because a motion to suppress is unlikely to have been successful, counsel was not ineffective for failing to challenge Petitioner's confession.  *See Chandler v. Moore*, 240 F.3d 907 (C.A. 11 2007) (counsel not ineffective for failing to raise a non-meritorious issue).  Because Petitioner has failed to establish that counsel's performance was deficient, it is unnecessary for this court to determine whether Petitioner was prejudiced by counsel's failure to file a pre-trial motion to suppress. *See Strickland*, 466 U.S. at 697 (stating that there is no reason for a court "to address both components of the inquiry if the defendant makes an insufficient showing on one.").  Accordingly, the Court finds that Petitioner has failed to establish that the state court's decision was either contrary to, or an unreasonable application of federal law, and this claim is denied pursuant to § 2254(d).

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

18

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.   The Petition for Writ of Habeas Corpus (Doc. 1) filed by Theodore J. Widen is

**DENIED**, and this case is **DISMISSED WITH PREJUDICE**.   The Clerk of Court shall enter

judgment accordingly.

2.   The Clerk of Court is directed to close this case.

**DONE AND ORDERED** at Ocala, Florida, this 28th day of July 2010.

UNITED STATES DISTRICT JUDGE

Copies to:
pssa 7/28
Theodore J. Widen